THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YVETTE CABRERA,

                     Plaintiff,

       -against-

NYC; NYC HEALTH AND HOSPITALS                    *COMPLAINT*
CORP.; BELLEVUE HOSPITAL CENTER;
VICTOR INFANTE; CWA 1180;
DOROTHY HARRIS; SARAH RODRIGUEZ;                 **Jury Trial Demanded**
AND DENA RAKOWER,

                     Defendants.
------------------------------------------------------------X

### COUNT ONE

   1. Plaintiff **YVETTE CABRERA**, by her attorney, Andrew J. Schatkin, Esq.,

alleges as follows: defendants, **NYC; NYC HEALTH AND HOSPITALS CORP.;**

**BELLEVUE HOSPITAL CENTER; CWA 1180; VICTOR INFANTE; DOROTHY**

**HARRIS; SARAH RODRIGUEZ; AND DENA RAKOWER** violated certain civil rights

guaranteed to the plaintiff through the purposeful, unlawful discrimination of plaintiff based upon

her Age and National Origin and i. e., American Hispanic and the purposeful and ultimate

termination of plaintiff's employment. Defendants **NYC; NYC HEALTH AND HOSPITALS**

**CORP.** and **BELLEVUE HOSPITAL CENTER** are liable because of their policy and custom

of encouraging, tolerating, permitting and ratifying a pattern of illegal discrimination and

termination which was known to them or of which they should have known.

### JURISDICTION

   2. This action is brought pursuant to Title 42 United States Code, Section 2000(e)

et seq. and 42 USC Sec. 12101. The Court's jurisdiction is invoked pursuant to Title 42 U.S.C.

Sec. 2000e-5(f)(3) 29 U.S.C. 623ff, and NYS Executive Law 296. The pendent jurisdiction of the Court is invoked pursuant to 28 USC Sec. 1367.

## *PARTIES*

3.  The plaintiff **YVETTE CABRERA** is and was at all times relevant a citizen of the United States and a resident of Manhasset and the State of New York.

4.  Defendant **NYC** is a municipal entity and city in the State of New York.

5.  Defendant **NYC HEALTH AND HOSPITALS CORP.** is a municipal division of the City of New York in the State of New York.

6.  Defendant **BELLEVUE HOSPITAL CENTER** is a municipal hospital in the City of New York.

7.  Defendant **DENA RAKOWER** was at all times herein a managerial employee and Associate Director at the **BELLEVUE HOSPITAL CENTER**.

8.  Defendant **VICTOR INFANTE** was at all times herein a managerial employee and Associate Director, Ambulatory Care, at the **BELLEVUE HOSPITAL CENTER**.

9.  Defendant **DOROTHY HARRIS** was at all times mentioned herein the Union Shop Steward at the **BELLEVUE HOSPITAL CENTER**.

10.  Defendant **CWA 1180** Administrative Employees at all times mentioned herein was the Union representing all clerical and administrative employees employed at the **BELLEVUE HOSPITAL CENTER**.

## *STATEMENT OF FACTS*

11.  In 1984 the Plaintiff began working as an Office Associate at the **BELLEVUE HOSPITAL CENTER** with the duties of a Secretary/Clerk, and, in 1985, Ms.

-2-

Cabrera was promoted to the position of PAAI Principal Administrative Associate in the HIV Program Section. Ms. Cabrera's duties were typing; Clerical work; and the plaintiff supervised a staff of three. Thereafter, in 1989, the plaintiff was promoted to the title of PAAII. In this position, the plaintiff supervised a staff of three; and was sent to training to do HIV counseling. In this position, the plaintiff typed meetings and set up grants. The plaintiff was in this position until 1999, and did a great deal of Spanish translation.

12. In 1995/1996, the Aids Department needed an Associate Director for the program, and Dena Rakower, a dietician, took over the job, and became the plaintiff's supervisor. Ms. Rakower was a friend of Ms. Robles and the Associate Executive Director of the HIV program. In 1996, Ms. Rakower was on vacation leave, and had exhausted her vacation time and sick time, and so she went on leave without pay. Ms.Rakower came to the plaintiff because she was the timekeeper for the department, and told the plaintiff, as the timekeeper of the department, to mark her on the payroll, stating she was buying a house, and the bank was going to investigate to see if she was really working at Bellevue, and that was the reason she needed to be on the payroll. Hence, the result was that Ms. Rakower was being paid and was not working for three months or more. Thereafter, an anonymous complaint was made concerning this time and leave violation and Ms. Rakower blamed this on Ms. Cabrera. Ms. Cabrera was subject to a campaign of petty harassment by Ms. Rakower, including a precipitous reassignment to the Urology clinic after 13 years of successful service in the administrative office and a negative evaluation after years of glowing and positive evaluations, alleging time and leave violations. In May of 1997, the plaintiff went to Ms. Robles, and begged that she did not want to work in the Urology Clinic since she was a secretary, and the plaintiff was told that she did not have a say nor career as a secretary

-3-

and that Ms. Robles was the Executive Director and could do what she wanted. This event caused the plaintiff great anxiety and great mental suffering, almost causing Ms. Cabrera a nervous breakdown.

13. From May 1997 to January of 1998, the plaintiff was assigned to the Urology clinic, and was only permitted to translate for patients, although she was supposed to be supervising clerical staff; doing budgets; writing policy; scheduling patient's appointments; and filing and answering the phones.

14. In 1999, the plaintiff was again transferred to the Dermatology clinic where, as PAAII, she supervised four clerical staff. For one year, the plaintiff also supervised two clinics, the Rectal and Oral Surgery Clinics, in addition to her regular responsibilities. The plaintiff's work included work as a translator; patient appointments; reviewing charts for the joint commission; fixing computers, and retrieving labs for patients. Ms. Cabrera for one year supervised three clinics for a total of five people.

15. The plaintiff's supervisor, at the time of this move to Dermatology, was Victor Infante, Associate Director for Ambulatory clinics. The plaintiff began experiencing difficulty with the clerical staff. In one instance, Ms. Somar yelled at the plaintiff in front of patients and in front of Doctors, and the plaintiff reported these incidents to Victor Infante and the Union, by Dorothy Harris, but no one did anything.

16. In December of 2002, Mr. Infante called the plaintiff to his office to let her know there might be a PAA Pal at the Central office HHC Human Resources, 125 Worth Street, meaning that the persons who had passed the civil service test (the P AA test) and passed it were up for promotion, and would replace the current Provisional PAAS. The plaintiff asked Mr.

Infante how this could be, and what he could do to help, and that she might lose her job. Mr. Infante had no answer, nor did Dorothy Harris, the Union representative. As it happened, however, the Union, through Ms. Harris, represented her in this matter and saved the plaintiff's job.

17. Again, in January of 2003, Victor Infante called the plaintiff to his office and told her they were having another PAA at HHC and that the plaintiff might lose her job. The plaintiff again went to Ms. Harris and Ms. Harris stated she would not represent her at this meeting, and that Mr. Infante was going. That same day, Mr. Infante informed the plaintiff in the afternoon that her job was terminated. Thereafter, on February 21, 2003, in a letter from Sara Rodriguez, the plaintiff informed her of her termination effective March 2003.

18. In 1991, defendant **NYC**, et al. posted a civil service examination for the position of PAAII. Plaintiff and others took and passed the test, but the test results were discarded on the basis that no one had passed the test. Despite her desire to take any offered tests, the plaintiff was not informed of the opportunity to take the tests or told when they were given.

19. At the time of this firing, the plaintiff was 53 years old and of Hispanic Origin. Along with two other Hispanics, she was terminated; Illiana Garcia, Hispanic, 51 and Dinora Aguilar, age 47 also Hispanic. That same day, Janie Duncan was also terminated, a black employee, who got a line the same day, and Marie Diggs was also terminated, also black, who was offered the position of Office Associate, but declined the position.

20. Upon information and belief, the plaintiff was terminated for select and disparate reasons on the basis of her Age and National Origin, along with the other Hispanics, but

-5-

less senior black employees were favored and not terminated, and, in fact, two black employees, Ms. Duncan and Ms. Diggs, was either given another position, or offered another position. Upon information and belief, most clerical secretarial employees at Bellevue were blacks, and Mr. Infante specifically favored black employees. In addition, the plaintiff was replaced by a black person, as well as Ms. Garcialivo.

21. Despite repeated requests to Mr. Infante and Ms. Dorothy Harris, the Union Steward, and despite many positions being open, and despite the plaintiff making many applications, the plaintiff was not offered another position in spite of availability, and posting, and lines being open.

22. As a result of this harassment, unfair treatment, all due to the plaintiff's National Origin and Age, by said individuals, and institutional defendants, the plaintiff suffers and continues to suffer from depression, anxiety and sleeplessness, all to her great emotional harm, and also suffers continuous panic attacks.

23. The plaintiff had an annual salary of $41,000.00 per year. The plaintiff formerly had GHI medical insurance, and had to pay $800.00 Cobra from March to November 1, 2003. The plaintiff formerly had dental; optical and prescription coverage, and presently pays $131.00 per month for these benefits. The plaintiff had six weeks vacation, and 13 paid holidays, all of which she lost. Since she was fired one year before 20 years of service, she has lost her right to life-time medical insuance.

### FIRST CLAIM AGAINST DEFENDANTS
### DOROTHY HARRIS AND
### CWA 1180

24. Paragraphs 1-24 are incorporated herein by reference.

-6-

25. Defendants Dorothy Harris, the Union Steward, and CWA 1180, acting together, did fail to represent the interests and act in good-faith representation of the plaintiff, and did so for discriminatory reasons and motivation because of her National Origin; Hispanic; and Age.

### SECOND CLAIM FOR RELIEF AGAINST BELLEVUE HOSPITAL CENTER; CWA 1180; NYC AND NYC HEALTH AND HOSPITALS CORP.

26. Paragraphs 1-23 are incorporated herein by reference.

27.. All named defendants, acting within their generally accepted practices and policies, did knowingly and purposefully discriminate against the plaintiff in regard to her compensation, terms, conditions or privileges of employment because of plaintiff's Age and National Origin under 42 U.S.C. 2000(e) and 42 U.S.C. 12101.

28. As a result of the defendants' actions, plaintiff did suffer damage from and as a direct result of the purposeful discrimination because of and on the basis of plaintiff's Age and race.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

29. Paragraphs 1-27 are incorporated herein by reference.

30. Plaintiff, by reason of the outrageous treatment afforded her by all named defendants and their named managerial employees was subjected to extreme and severe emotional distress causing her great depression, anxiety, loss of sleep, and great emotional hurt and harm.

### FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

31. Paragraphs 1-29 are incorporated herein by reference.

-7-

32. All defendants, acting together, purposefully discriminated against the plaintiff by reason of age and national origin–all in violation of Section 296 of the New York State Executive Law.

**WHEREFORE**, plaintiff **YVETTE CABRERA** requests that this Court:

(a) Award compensatory damages against defendants, each of them, jointly and severally, in the amount of $5,000,000.

(b) Award punitive damages against the defendants justly and severally in the amount of $4,000,000.

(c) Award costs of this action, including attorney's fees, to plaintiff, and

(d) Award such other and further relief as this Court may deem appropriate.

(e) Award full back pay, including vacation and personal days.

(f) Award the plaintiff reinstatement to her former position.

A jury trial is demanded.

Dated: Jericho NY
    April 8, 2004.

LAW OFFICES OF ANDREW J. SCHATKIN
350 Jericho Turnpike
Jericho, New York 11753

Andrew J. Schatkin (6516)

-8-