UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

YVETTE CABRERA,

Plaintiff,

04 Civ. 2688 (RWS)

- against -

O P I N I O N

NYC; NYC HEALTH AND HOSPITALS CORP.;
BELLEVUE HOSPITAL CENTER; VICTOR
INFANTE; CWA 1180; DOROTHY HARRIS;
SARAH RODRIGUEZ; and DENA RAKOWER,

Defendants

-----------------------------------------X

A P P E A R A N C E S:

ANDREW J. SCHATKIN, ESQ.
Attorney for Plaintiff
350 Jericho Turnpike
Jericho, NY 11753

HONORABLE MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for HHC Defendants
100 Church Street, Rm. 2-103
New York, NY 10007
By:  JONATHAN BARDAVID, ESQ.
     Assistant Corporation Counsel
     Of Counsel

SEMEL, YOUNG & NORUM
Attorneys for Defendants CWA Local 1180 and Dorothy Harris
275 Seventh Avenue, Suite 2300
New York, NY 10001
By:  AMY S. YOUNG, ESQ.
     Of Counsel

**Sweet, D.J.,**

Defendants the City of New York ("the City"), New York City Health and Hospitals Corporation ("HHC"), Bellevue Hospital Center ("Bellevue"), Victor Infante ("Infante"), Sarah Rodriguez ("Rodriguez"), Dena Rakower ("Rakower") (collectively, the "HHC Defendants"), and Defendants Local 1180 of the Communications Workers of America ("Local 1180") and Dorothy Harris ("Harris") (collectively, the "Union Defendants") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the complaint of Plaintiff Yvette Cabrera ("Cabrera"). Plaintiff's complaint, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and the New York State Human Rights Law (the "NYHRL"), New York Executive Law § 296, alleged that all Defendants discriminated against her based on her age and national origin. For the reasons set forth below, the motions are granted and the complaint is dismissed.

## Prior Proceedings

The complaint, filed April 8, 2004, alleged a first cause of action of failure to represent against the Union Defendants, a second cause of action against the City of New York, HHC, Bellevue, and Local 1180 for age and national origin discrimination in violation of Title VII and the ADEA, a third cause of action

1

against all Defendants for intentional infliction of emotional distress, and a fourth cause of action against all Defendants for age and national origin discrimination in violation of the NYHRL.

The Union Defendants moved to dismiss Cabrera's complaint on May 13, 2004. In an opinion dated September 13, 2004, this Court dismissed the first and second causes of action as to the Union Defendants. Thus, the following claims survived the motion to dismiss: (1) Title VII and ADEA discrimination claims against HHC, Bellevue, and the City of New York; (2) a state-law discrimination claim against all Defendants; and (3) an intentional infliction of emotional distress claim against all Defendants.

Discovery proceeded, and the HHC Defendants and the Union Defendants filed separate motions for summary judgment on January 27, 2006. Plaintiff filed her opposition to each motion on February 26, 2006, and the motions were marked fully submitted on March 6, 2006.

**The Facts**

The HHC Defendants and the Union Defendants submitted statements of material facts pursuant to Local Rule 56.1(a). Cabrera did not respond to these Rule 56.1 statements as required by Local Rule 56.1(b), and therefore the facts set forth in the Defendants' Rule 56.1 statements are deemed admitted where

2

supported by the record.  See Local Rule 56.1(c); Giannullo v. City
of New York, 322 F.3d 139, 140 (2d Cir. 2003); Evans v. City of New
York, 308 F. Supp. 2d 316, 319 n.2 (S.D.N.Y. 2004).

Rather than respond to the Defendants' Rule 56.1
statements, Cabrera submitted "Plaintiff Yvette Cabrera's Statement
of Undisputed Facts Pursuant to Rule 56.1," which summarizes
certain of the deposition testimony.  For purposes of this motion
only, the HHC Defendants accept as true the employment actions
about which Cabrera has complained.

The material facts as set forth below are not disputed
except as noted.

Cabrera began her employment with HHC at Bellevue as a
provisional office associate on or about December 10, 1984.  When
she was hired she was provided a "Reminder to Provisional
Employees."  This reminder stated:  "you have been hired as a
'provisional' employee.  Since you do not have 'permanent' status
it is possible that you may have to be replaced by someone who is
on a Health and Hospitals Corporation list."  On or about November
23, 1984, Cabrera signed and acknowledged that she received the
reminder.  According to Cabrera, she did not read the reminder and
signed it automatically.

3

On or about April 14, 1986, Cabrera was provisionally promoted to the title of Principal Administrative Associate ("PAA"). Cabrera was again provided the "Reminder to Provisional Employees" and signed and acknowledged receipt of the reminder.

On or about March 19, 1989, Cabrera was provisionally promoted to the title of PAA II.

Cabrera was a provisional employee throughout her employment at Bellevue. At no time did she have a permanent civil service title.

In or about January 1995, Rakower became Cabrera's supervisor. During an unspecified time period in 1996, Rakower asked Cabrera -- the timekeeper of the department -- to mark Rakower present on the payroll although she was actually on unpaid leave. Cabrera complied with the request. After an anonymous complaint, Rakower was reprimanded by her supervisor. Cabrera claims Rakower blamed her for the anonymous complaint and subjected her to harassment.

On or about May 28, 1997, Cabrera was transferred to the Virology Clinic, where Rakower no longer supervised her. After the transfer she had no contact with Rakower.

4

Upon her transfer to the Virology Clinic, Cabrera was supervised by Martha Robles ("Robles") and Steven Fischer ("Fischer"). Robles is a Hispanic female and Fischer is a white male. Cabrera has alleged that Robles discriminated against her by transferring her to the Virology Clinic, and that the transfer caused Cabrera "great anxiety and great mental suffering," (Compl. ¶ 12). Cabrera also has claimed that Robles was nasty to Hispanic employees.

In or around May 1997, Harris told Cabrera that Local 1180 could not do anything about her transfer to the Virology Clinic. Cabrera did not request that a grievance be filed.

In January 1998, Cabrera was transferred to the Dermatology Clinic, where she supervised clerical staff. Cabrera's supervisor in the Dermatology Clinic was Infante, an African-American male. Robles no longer supervised Cabrera after her transfer to dermatology.

From June 1998 to approximately June 1999, Cabrera supervised the clerical staff in the Dental and Oral Clinics, as well as the Dermatology Clinic. Cabrera did not complain to Harris or Local 1180 about her working conditions during this time.

Cabrera has alleged that when she began supervising the Dermatology Clinic, one of her subordinates, Martha Somer

5

("Somer"), was disrespectful toward her and challenged her authority. Cabrera alleges that she complained to Infante about Somer but Infante did not address the problem. Cabrera has alleged that Infante's failure to discipline Somer was discriminatory. Like Cabrera, Somer is Hispanic. Cabrera has not complained about Local 1180's handling of any incidents with Somer.

Cabrera also has alleged that Infante discriminated against her by assigning her the "worst people" to supervise and by not allowing Cabrera to take sick time. Cabrera acknowledges that after she complained to her union she was allowed to take the sick time.

On September 13, 1999, the Department of Citywide Administrative Services for the City of New York certified a list of individuals who passed the promotional examination for the civil service title Principal Administrative Associate.

Beginning on or about October 20, 2000, Bellevue began replacing its provisional PAAs with individuals from the certified eligible list. All provisional PAAs had their employment terminated in reverse seniority order with the most junior provisional employees being terminated first.

From October 20, 2000 until June 25, 2002, five civil service hiring pools were held for the title of PAA. A total of

6

ten provisional PAAs at Bellevue were replaced by individuals from the certified eligible list during this time.

On February 20, 2003, another civil service hiring pool was held. On February 21, 2003, Cabrera was notified that as a result of a permanent appointment from the civil service pool, her services as a provisional PAA at Bellevue were terminated effective March 7, 2003.

On June 24, 2003, another civil service hiring pool was held and as a result Wanda Guddemi ("Guddemi"), Cynthia Meyers ("Meyers"), Cynthia Belcher ("Belcher"), Marie Diggs ("Diggs"), and Gloria Walker ("Walker") had their provisional employment as PAAs at Bellevue terminated. Guddemi is an Hispanic female. Meyers is a white female. Belcher, Diggs, and Walker are all African-American females. Guddemi, Meyers, Belcher, Diggs, and Walker all had underlying permanent civil service appointments, and therefore were offered positions at Bellevue within their previous civil service titles. All of these employees, except Diggs, returned to their previous civil service title. Diggs declined the position and retired.

On August 14, 2003, the last relevant civil service hiring pool was held. Rivan Blackman ("Blackman") had his provisional employment as a PAA at Bellevue terminated and was replaced by an individual from the certified eligible list.

7

Blackman had the underlying civil service title of clerical associate and was returned to his permanent position as a clerical associate. As of August 14, 2003, all provisional PAAs at Bellevue had been replaced by permanent employees who were on the certified eligible list. In total, twenty provisional PAAs were replaced by permanent employees who were on the certified eligible list. Six provisional PAAs were offered positions within their underlying civil service title.

Seven provisional PAAs who did not have an underlying civil service position were terminated from their provisional employment as PAAs but were selected to provisionally fill vacant positions in lower titles. Of these seven provisional PAAs, two were Hispanic, three were African-American, one was Indian, and one was Filipino. Six of the seven were, like Cabrera, over fifty years of age.

On April 1, 2003, Cabrera filed a complaint with the New York State Division of Human Rights ("SDHR"), alleging that she was discriminated against by the HHC Defendants because of her age, race, and sex. The complaint was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC") on that date. On April 24, 2003, Cabrera's SDHR complaint was dismissed for administrative convenience. On January 9, 2004, the EEOC issued Cabrera a right to sue letter.

8

A competitive promotional examination for the PAA title was given in 1997. Cabrera did not take that examination. The eligible list from the 1997 PAA examination was established on September 13, 1999. Cabrera's name did not appear on that list.

Cabrera's position was first sent to a PAA pool in December 2002. Although a candidate was selected to fill her position, that candidate declined the position the next day. For that reason only, Cabrera was not removed from the payroll due to the PAA pool held in December 2002.

In early 2003, Cabrera's position was sent to a second PAA pool, and Cabrera's position was selected by a permanent candidate. As a direct result of the second PAA pool, by letter dated February 21, 2003, Cabrera was notified that she was being replaced by a permanent candidate.

Union staff representative Joseph Calderon ("Calderon") informed Cabrera on March 4, 2003 that provisional employees such as she do not accrue seniority and can be replaced by permanent employees at the discretion of the agency in question.

Cabrera was removed from the payroll on March 7, 2003. Cabrera did not have any interaction with Harris after that date.

No provisional employee who was removed from the payroll returned to the payroll through the grievance and arbitration provisions of the collective bargaining agreement.

Local 1180 did not get a job for any provisional employee, nor does it have any authority to hire at HHC. Furthermore, Local 1180 cannot prevent a provisional employee's position from being brought to a pool of permanent candidates.

## Discussion

### I.    The Standard For Summary Judgment

Pursuant to Rule 56, summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The court will not try issues of fact on a motion for summary judgment, but rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (internal citations omitted). If, however, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. Bickhardt v. Ratner, 871 F. Supp. 613 (S.D.N.Y. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Thus, "summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

11

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).

## II. The City Is Not A Proper Party To This Lawsuit

It is undisputed that the City did not employ Cabrera. As this Court has recognized, Lennon v. City of New York, 392 F. Supp. 2d 630, 639 (S.D.N.Y. 2005), New York courts consistently have held that the City is a separate legal entity from HHC, see, e.g., Haynes v. Giuliani, 238 A.D.2d 257, 258 (N.Y. App. Div. 1997) ("[HHC] is an entity separate and distinct from the City of New York with complete autonomy respecting its personnel." (internal quotations omitted)); Binyard v. City of New York, 151 A.D.2d 712, 712 (N.Y. App. Div. 1989) (same); Williams v. City, 97 A.D.2d 372 (N.Y. App. Div. 1983) ("[The City] is not a proper party in an action against HHC, which is a separate and distinct entity."). In the absence of any allegations directed to the City, it is not a proper party to this action, and all of Cabrera's claims against the City are dismissed.

12

## III. All Discrimination Claims Are Dismissed

For the reasons set forth below, all of Cabrera's discrimination claims against both the HHC Defendants and the Union Defendants are dismissed. Certain of Cabrera's claims are time-barred by the relevant statutes of limitations, and as to the remaining claims, Cabrera has not established a prima facie case of discrimination sufficient to withstand Defendants' motions for summary judgment.

### A. Certain Discrimination Claims Are Time-Barred

Title VII and the ADEA, with certain exceptions not applicable here, require claimants to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory or retaliatory act. See 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325-29 (2d Cir. 1999); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) ("This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." (internal citations omitted)); Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) ("In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of

13

limitations for filing a charge of discrimination with the EEOC is 300 days."); Miller v. IT&T Corp., 755 F.2d 20, 23 (2d Cir. 1985). For cases alleging wrongful termination, the 300-day period begins to run when plaintiff receives notice of her termination. See Miller, 755 F.2d at 23. In all other cases, the 300-day period begins to run when the plaintiff receives notice of the allegedly discriminatory act. See Shockley v. Vermont State Colls., 793 F.2d 478, 481 (2d Cir. 1986).

Cabrera filed her charge of discrimination with the NYSDHR and the EEOC on April 1, 2003, alleging that her termination was discriminatory. Accordingly, all federal-law discrimination claims that accrued prior to June 4, 2002 are time-barred.

Cabrera also has brought pendent state-law discrimination claims pursuant to the New York State Human Rights Law, N.Y. Executive Law § 296, which has a three-year statute of limitations. N.Y. C.P.L.R. 214(2); Koerner v. State of New York Pilgrim Psychiatric Ctr., 62 N.Y.2d 442 (1984). Cabrera filed the instant suit on April 8, 2004. As such, all of Cabrera's state-law discrimination claims that accrued prior to April 8, 2001, are likewise time-barred.

14

## 1. The Continuing Violation Doctrine Is Inapplicable

Cabrera contends that the continuing violations doctrine permits actions occurring prior to June 4, 2002 (under Title VII and the ADEA) and April 8, 2001 (under the NYHRL) to form the basis for liability. The continuing-violation doctrine "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (quoting Annis v. County of Westchester, 136 F.3d 239, 246 (2d Cir. 1998).

At the outset, "the continuing violation doctrine is disfavored in this Circuit and will be applied only upon a showing of compelling circumstances." Lloyd v. WABC-TV, 879 F. Supp. 394, 399 (S.D.N.Y. 1995). See also Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000); McMillan v. City of New York, 95 Civ. 5459 (CSH), 1997 U.S. Dist. LEXIS 14312, at *5-*6 (S.D.N.Y. Sept. 19, 1997). The Second Circuit has repeatedly ruled that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Quinn, 159 F.3d at 765 (rejecting continuing violation claim despite allegations of more than 30 incidents of sexual harassment). It is also well-settled that simply "cit[ing] a number of instances in which [plaintiff]

15

was allegedly discriminatorily treated" will not suffice to establish a continuing violation necessary to salvage untimely claims. Ghosh v. New York Univ. Med. Ctr., 576 F. Supp. 86, 93 n.24 (S.D.N.Y. 1983). "The crucial time for accrual purposes is when the plaintiff becomes aware that [she] is suffering from a wrong for which damages may be recovered in a civil action. To permit [her] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable [her] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (quoting Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980)).

Here, there is no evidence to establish that the alleged acts of Defendant Rakower and HHC employees Infante and Robles were part of a discriminatory policy or mechanism. The allegations that form the basis of Cabrera's untimely discrimination claims include harassment by Rakower in 1996, Cabrera's transfer to the Virology Clinic in May 1997, her transfer to the Dermatology Clinic in January 1998, and an incident in which she was yelled at by a subordinate later in 1998. Cabrera's mere characterization of this series of events as "continuous harassment" (Pl.'s Mem. Opp. Summ. J. at 17) does not establish a "discriminatory policy or mechanism." Rather, the nature of these isolated and discrete events demonstrates that no reasonable juror could conclude that

16

Cabrera was subjected to one ongoing discriminatory policy or mechanism from 1996 to 2003. Under both federal and state law, therefore, Cabrera's only timely claims are those relating to the termination of her provisional employment and the fact that she was not subsequently rehired.

## B. Discrimination Claims Against The HHC Defendants

Cabrera has alleged claims against HHC and Bellevue under Title VII and the ADEA, and a claim against all HHC Defendants (including individual defendants Rakower, Rodriguez, and Infante) under the NYHRL. Because claims under these federal and state anti-discrimination statutes are evaluated by the same legal standard, Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992); Boyce v. New York City Mission Soc., 963 F. Supp. 290, 295 (S.D.N.Y. 1997), all of Cabrera's discrimination claims against the HHC Defendants are addressed together below.

### 1. The Burden-Shifting Analysis

As the Second Circuit has explained, the "ultimate issue" in any employment discrimination case is "whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason.'" Stratton v. Dep't for the Aging, 132 F.3d 869, 878 (2d Cir. 1997).

17

The basic framework for discrimination claims under Title VII, the ADEA, and the NYHRL is the three-step burden-shifting analysis developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under McDonnell, the plaintiff has the initial burden of establishing a prima facie case of unlawful discrimination by showing that the plaintiff is: (1) a member of a protected class, (2) who was qualified for his position, (3) who suffered an adverse employment action, (4) under circumstances giving rise to an inference of discrimination. See McDonnell, 411 U.S. at 802; Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If a plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory purpose for the adverse employment decision. See McDonnell, 411 U.S. at 802; Austin, 149 F.3d at 153. Once the employer articulates such a purpose, the burden shifts back to the plaintiff to show that the "employer's proffered reasons are shown to be a pretext for discrimination." Austin, 149 F.3d at 153 (citations omitted). To make this showing, the plaintiff must demonstrate "both that the [proffered] reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515.

## 2. **Cabrera Is Unable To Establish A Prima Facie Case Of Discrimination**

The fourth prong of the McDonnell Douglas test requires the plaintiff to establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See, e.g., McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). Cabrera has produced no substantial evidence that either the termination of her provisional employment or the failure to re-hire her in a different position was the product of discrimination on the basis of her age, race, or national origin.

Cabrera's claim of discrimination depends on her allegation that she was treated differently from non-Hispanic HHC employees who were similarly situated. A plaintiff may make a prima facie case for an inference of discrimination "by showing that a similarly situated individual not in [plaintiff's] protected group . . . was treated differently." Tramble v. Columbia Univ., No. 97 Civ. 1271 (RWS), 1999 WL 61826, at *5 (S.D.N.Y. Feb. 10, 1999). However, in order to be considered "similarly situated, the individual to whom [a plaintiff] attempts to compare [herself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (internal quotations omitted). Here, Cabrera has not met her burden of demonstrating that any similarly situated employee was treated differently than her and, as such, the HHC Defendants are entitled

19

to summary judgment. See Spiegler v. 1st Disc. Bank, 2003 U.S. Dist. LEXIS 14414 (S.D.N.Y. 2003) (holding that summary judgment is appropriate where no reasonable jury could find that the employees plaintiff compared herself to were similarly situated).

The New York State Constitution requires that public employers use the civil service hiring system and determine merit and fitness by examination. N.Y. Const. art. V, § 6. The New York Civil Service Law and HHC rules specify that candidates who pass the civil service examination are placed on an eligible list. N.Y. Civ. Serv. § 56; HHC Pers. Rules and Regulations §§ 4.1, 4.6. Provisional appointments to competitive civil service positions such as PAA are permitted only when there is no valid eligible list available for the title in question. N.Y. Civ. Serv. § 65; HHC Pers. Rules and Regulations §§ 4.7.1 et seq. Provisional appointments must be terminated as soon as possible upon the certification of an eligible list and a candidate from that eligible list appointed to the position in place of the provisional employee. N.Y. Civ. Serv. § 63(3); HHC Pers. Rules and Regulations § 5.5

A provisional appointee, such as Cabrera, is not permitted by law to hold her position in the civil service to the exclusion of a candidate on the appropriate eligible list for that position. McCann v. Kern, 262 A.D. 109 (1st Dep't 1941). A provisional employee, regardless of how long she has served in a

20

title, has no right to that position in the face of a valid eligible list. Haynes v. County of Chautauqua, 55 N.Y.2d 814 (1981); Civil Serv. Employees Ass'n, Local 1000 v. State Dep't of Civil Serv., 250 A.D.2d 968 (3d Dep't 1998). This is true even if the employee has served in the title beyond the date an eligible list was established. Becker v. New York State Civil Serv. Comm'n., 61 N.Y.2d 252 (1984).

It is undisputed that after the establishment of the civil service list all provisional employees in Cabrera's title at Bellevue, regardless of age, race, or national origin, were terminated in reverse seniority order with the most junior employees being terminated first. All of the individuals who replaced the provisional employees were appointed from the established civil service list. As every provisional PAA had their provisional employment terminated, Cabrera has not established that her termination occurred under circumstances giving rise to an inference of discrimination.

Cabrera also has alleged that she was discriminated against on the basis of her age and her national origin because certain provisional PAAs were offered other positions after their provisional employment was terminated. Specifically, Guddemi, Meyers, Belcher, Diggs, Blackman, and Walker had their provisional appointments terminated, but were offered other positions at Bellevue. These individuals were not, however, similarly situated

21

to Cabrera because each of these individuals held underlying civil service status. Pursuant to HHC Rules and Regulations and the Civil Service Law, employees who have an underlying permanent civil service title cannot be terminated without being provided notice and an opportunity to be heard. See HHC Pers. Rules and Regulations § 7:5 et seq.; see also N.Y. Civ. Serv. § 75. When a permanent employee is promoted to a provisional appointment they have an absolute right by operation of law to return to their previous permanent civil service title. See N.Y. Const. art. V, § 6; HHC Pers. Rules and Regulations § 7:5 et seq.; see also N.Y. Civ. Serv. § 75.

Cabrera also has claimed that certain non-Hispanic provisional PAAs without underlying civil service titles were selected to fill vacant lines and that Cabrera was not selected for these vacancies based upon her age and national origin. As an example, Cabrera has alleged that Janice Duncan ("Duncan"), an African-American who did not have an underlying civil service title, was selected to fill a vacant line and that Cabrera was not. However, there is simply no evidence in the record to support the claim that Cabrera was not selected to fill a vacant line based upon her age and/or national origin. As noted above, all provisional PAAs, regardless of age, race, or national origin, had their provisional employment terminated. Seven of these provisional PAAs without underlying civil service titles were selected to provisionally fill vacant lines in a lower civil

22

service title. Of those seven, two were Hispanic, three were African-American (including Duncan), one was Indian, and one was Filipino. There is no evidence from which a reasonable juror could infer that Cabrera was not selected to fill a vacant line based upon her race or national origin.

The record also establishes that six of the seven provisional PAAs without underlying civil service titles who were selected to fill vacant lines were, like Cabrera, over fifty years old. As such, there is no evidence from which a reasonable juror could infer that Cabrera was discriminated against on the basis of her age.

Accordingly, all discrimination claims against the HHC Defendants are dismissed.

## C. The NYHRL Claims Against The Union Defendants Are Dismissed

Cabrera makes only the following allegation against the Union Defendants: "Defendants Dorothy Harris, the Union Steward, and CWA 1180, acting together, did fail to represent the interests and act in good-faith representation of the plaintiff, and did so for discriminatory reasons and motivation because of her National Origin; Hispanic; and Age." (Compl. ¶ 25.) However, "[s]tate-law claims are preempted if they arise out of or are encompassed by a breach of the federal duty of fair representation." Agosto v.

23

Corr. Officers Benevolent. Ass'n, 107 F. Supp. 2d 294, 310-11 (S.D.N.Y. 2000) (plaintiff's discrimination claims against her union, which represented employees of the City of New York, were preempted by federal duty of fair representation law); see also Angrisani v. Long Island R.R., No. CV-01-8453 (SJF) (MDG), 2005 WL 1311798 (E.D.N.Y. June 1, 2005); Snay v. United States Postal Serv., 31 F. Supp. 2d 92, 99 (S.D.N.Y. 1998). Because Cabrera claims that the Union Defendants violated NYHRL by not properly representing her, this claim is preempted. See Marrero v. City of New York, No. 02 Civ. 6634 (DLC), 2003 WL 1621921 (S.D.N.Y. Mar. 28, 2003).

## IV. The Claim For Intentional Infliction of Emotional Distress Against All Defendants Is Dismissed

Federal courts apply state substantive and procedural law when dealing with pendent state law claims. See Forbes v. Merrill Lynch, Fenner and Smith, Inc., 957 F. Supp. 450 (S.D.N.Y. 1997). New York has a one-year statute of limitations for intentional tort claims, including intentional infliction of emotional distress. Mariani v. Consolidated Edison Co. of New York, 982 F. Supp. 267, 273 (S.D.N.Y. 1997). When applying the statute of limitations, "[a]ll acts occurring before the limitations period are excluded from consideration." Santan-Morris v. N.Y. Univ. Med. Ctr., No. 96 Civ. 0621, 1996 WL 709577, at *2 (Dec. 10, 1996); see also, e.g., Weisman v. Weisman, 108 A.D.2d 853, 854 (2d Dep't 1985).

24

New York courts have been reluctant to apply a "continuing wrong" theory to include acts that took place outside of the statute of limitations in intentional infliction of emotional distress claims. Indeed, "for the statute of limitations to be tolled under the theory of continuing wrongs, the acts within the statute of limitations must be sufficient to make out a claim for intentional infliction of emotional distress . . . ." Santan-Morris, 1996 WL 709577, at *5 (emphasis added); see also, e.g., Bonner v. Guccione, 916 F. Supp. 271, 277 (S.D.N.Y. 1996) ("the conduct that falls within the limitations period must be in and of itself actionable conduct").

Cabrera filed her complaint on April 8, 2004. Therefore, for her intentional tort claim to survive Defendants' summary judgment motions, there must be evidence of actions taken by the Defendants on or after April 8, 2003 that are sufficient on their own to state a claim for intentional infliction of emotional distress.

Cabrera was informed of the termination of her provisional position on February 21, 2003. Her position was terminated effective March 7, 2003. Her complaint is silent as to any specific actions on the part of any Defendant occurring after April 8, 2003 that could give rise to a claim of intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress is comprised of four elements: "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. at 790-91, quoting Restatement of Torts, Second § 46 (1965). Because Defendants have demonstrated that there is an absence of evidence to support a finding of intentional infliction of emotional distress, this claim is dismissed as to all Defendants.

**Conclusion**

For the reasons set forth above, the Defendants' motions are granted and the complaint is dismissed.

It is so ordered.

**New York, NY**
**June**  $\mathcal{J} \mathcal{G}$  **, 2006**

**ROBERT W. SWEET**
**U.S.D.J.**

26